We concur in the opinion of his Honor in the court below. The evidence was offered under our statute, passed in 1803, Rev. Stat., ch. 35, sec. 13, which gives a defendant, charged by indictment (181) with the publication of a libel, the right to prove on the trial the truth of the charges in the libel. To ascertain the meaning of the act, in permitting the truth of the facts alleged to be given in evidence, it is necessary to see what was the law as to the justification of slander, both oral and written, at the time of its passage. Oral slander has ever been considered as a civil injury, to be redressed by a civil action; and the defendant was always at liberty to defend himself by proving on the trial that the words spoken were true, that is, that the plaintiff was guilty of the offense with which he had charged him, and it was essential to the validity of his plea that it should aver the guilt of the plaintiff in the act charged. 3 Chit. Plead, 1032. But this was not the case in prosecution for libels. At no time, by the common law, could a defendant give in evidence the truth of the facts which he had published of the prosecutor, and for the reason that a libel tends directly to a breach of the public peace. Whether, therefore, the individual *Page 133 
of whom he made the publication was guilty or not guilty of the charge, the danger to the public peace was not the less great. This continued to be the law of North Carolina until the act of 1803, above referred to. The truth, which that act gives to a defendant in a prosecution for a libel the right to show, is the truth which defendants were at liberty, under the plea of justification in civil suits for words spoken, to give in evidence. I have been able to find no case, in which the slander consists of rumor, where the defendant has been permitted to justify by showing that at the time he uttered or published the slander there was such a rumor or report. The nearest that any case has come to it is where the defendant gives the name of the person from whom he heard it at the time of the utterance or publication. This was ruled by Lord Kenyon in Davis v. Lewis, 7 Term, 17, and in the Resolution of the judges in the Earl of Northampton's case, 12 Co., 132. But the authority of both these cases, as to that point, has been (182) questioned not only in this country, but in England. ChancellorKent, in Dole v. Lyon, 10 Johns., 449, which was an action for a libel, in remarking upon these cases, observes: "But in neither of those cases was this point in judgment, and it may well be questioned whether even this rule as to slanderous words ought not to depend upon the quo animo with which the words with the name of the author are reported." In Lewis v.Walter, 5 Eng. C. L., 539, 4 Barn. Ald., 615, the doctrine in the Earl ofNorthampton's case is more than questioned by all the judges. Mr. JusticeHolroyd, after remarking at considerable length upon the dictum in thatcase, tells us what he understood to be the meaning of Lord Coke. "It is observable," says he, "that Lord Coke does not say that it is lawful to repeat slander in all cases and at all times, but only that a party may justify under certain circumstances. It must not, therefore, be taken as a general rule, even in oral slander, that the malicious repetition of it may be justified, if the name of the author be given up at the time." The doctrine upon this subject was elaborately considered in Hampton v. Wilson,15 N.C. 468. That was a case of oral slander. The evidence was that the defendant had said that it was reported the feme plaintiff was incontinent. The defendant attempted to justify by proving the existence of such a report at the time he spoke the words. It was ruled by his Honor, JudgeStrange, on the circuit, that the existence of the report would not justify its repetition by the defendant and would not avail him on his special plea; and upon appeal to this Court the judgment was affirmed. The ChiefJustice, in delivering the opinion of the Court, observes: "The justification does not consist merely in the facts that the defendant heard the words and gave up his author, for that gives him no right to repeat them, if false, especially if he knew them to be false, and with intent to cause the *Page 134 
(183) guilt of the plaintiff to be believed. Such conduct makes him the indorser of the slander," etc. The reason given by LordKenyon for his opinion in Davis v. Lewis is that by giving the author's name at the time of uttering the slander, he thereby gives to the plaintiff a person to answer to his action. A very insufficient reason, but, insufficient as it is, totally inapplicable to general rumor. Against this ofttimes many headed monster the slandered individual can, in the nature of things, have no redress, while the injury to him is spread wider and deeper by every thoughtless and malicious tongue which chooses to repeat it. The law, while careful that the liberty of speech and of the press shall be duly preserved, is equally solicitous to protect every man in his fair fame and character. In speaking of written slander, in connection with a justification by giving up the name of the person, from whom it was received, Chancellor Kent, in Dole v. Lyon, says: "There is no existence of such a justification in an action for a libel." The Legislature, then, in authorizing the truth to be given in evidence by the defendant on the trial of indictments for libel, must have meant that the justification should have been such as would have proved an adequate defense at common law in actions for verbal slander. It was nothing more than to extend to the defendant on prosecution the same defense, as he would have if called to answer for the private injury. All persons who concur in doing an unlawful act are guilty, and equally answerable to the State, when the injury is to the public, and to the individual who may receive injury from the act. That the publisher of a libel cannot protect himself by giving up the name of the author is shown by the precedents in our books and the practice of our courts. The cases are many where the publisher of a newspaper is held answerable, even when the libel is published with the name of the author. And if giving the name of the author of him who writes (184) a libel will not justify him who makes it public, much less will the publisher be justified by giving as his authority that perfectly irresponsible personage, common rumor. In this case the malice of the defendant, an essential ingredient in his offense, is apparent from the terms of the publication and the excuse as avowed.